IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

LILLY B.,

                    Plaintiff,

        vs.

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

                    Defendant.

**8:23CV61**

**MEMORANDUM AND ORDER ON
JUDICIAL REVIEW OF
COMMISSIONER'S DENIAL OF
BENEFITS**

Plaintiff Lilly B.[1] seeks judicial review of the denial of her application for disability insurance benefits and supplemental security income by defendant Commissioner of the Social Security Administration. Filing 1 at 3. Lilly B. has moved for an order reversing the Commissioner's decision. Filing 9. In response, the Commissioner filed a motion to affirm the Commissioner's final decision denying disability benefits. Filing 13. For the following reasons, the Court grants the Commissioner's motion to affirm and denies Lilly B.'s motion to reverse.

## I.  INTRODUCTION

### A.  Procedural Background

Lilly B. applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and protectively filed for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*, on December 10, 2019. Filing 7-2 at 17 (Administrative Record (AR) 16). Lilly B. alleged an onset disability date of November 21, 2019, in her applications. Filing 7-2 at 17 (AR 16). Lilly B.'s claims were initially denied by the Social

---

[1] The Court will refer to Plaintiff by first name and last initial to protect her privacy.

Security Administration (SSA) on August 6, 2020, and were denied again upon reconsideration on July 23, 2021. Filing 7-2 at 17 (AR 16).

Lilly B. filed a written request for a hearing on August 10, 2021, pursuant to 20 CFR 404.929 *et seq*., and 416.1429 *et seq*., following the two denials. Filing 7-2 at 17 (AR 16). The administrative law judge (ALJ) held a hearing to review the denial of Lilly B.'s applications on January 5, 2022. Filing 7-2 at 17 (AR 16). The administrative hearing was held by online video hearing in light of the COVID-19 Pandemic. Filing 7-2 at 17 (AR 16). On January 19, 2022, the ALJ issued an unfavorable decision on Lilly B.'s case. Filing 7-2 at 14 (AR 13). Lilly B. requested a review of the ALJ's decision, and on December 23, 2022, the Appeals Council issued an order denying her request for review. Filing 7-2 at 2 (AR 1). Lilly B. filed this action seeking judicial review and reversal of the ALJ's decision to deny her disability benefits and supplemental security income, or in the alternative, to vacate and remand this matter for further proceedings. Filing 1 at 3.

### B. Factual Background

#### 1. *The Claimant and Her Alleged Disabilities*

Lilly B. was twenty-one years old at the time of the alleged disability onset date of November 21, 2019, classifying her as a younger person (eighteen to forty-nine years old) pursuant to 20 C.F.R. § 404.1563 and 20 C.F.R. § 416.963. Filing 7-2 at 29 (AR 28). Lilly B. is classified as having a high school education, which places her in the fourth—and highest—educational ability as listed under 20 C.F.R. § 404.1564 and 20 C.F.R. § 416.964. Filing 7-2 at 29 (AR 28). Lilly B. lived with her father at the time of her alleged disability onset date and relied on him substantially as he had to drive her to and from work or the store due to her anxiety. Filing 7-2 at

21 (AR 20); Filing 7-2 at 25 (AR 24). Lilly B. worked as a part-time housekeeper after her alleged disability onset date of November 21, 2019, but the ALJ determined Lilly B. did not engage in substantial gainful employment during the period after her alleged disability onset date due to her insufficient earnings pursuant to 20 CFR § 404.1571 *et seq*. and 20 C.F.R. § 416.971 *et seq*. Filing 7-2 at 20 (AR 19); Filing 7-2 at 56 (AR 55). Lilly B. alleged in her disability report the conditions that limit her ability to work as follows: anxiety, manic depression, hearing impairment, and panic attacks. Filing 7-6 at 17 (AR 277).

Lilly B. avers three general bases in support of her motion for an order to reverse the Commissioner's decision. First, Lilly B. alleges the ALJ did not articulate sufficient reasons for finding the medical opinions of her therapist Laura Pryor, consultative psychological examiner Dr. Kelly Tamayo, and behavioral psychologist Dr. Marti were not persuasive. Filing 10 at 16–27. Second, Lilly B. contends the ALJ improperly evaluated Lilly B.'s subjective complaints in finding that her testimony was not credible. Filing 10 at 27. Last, Lilly B. disputes the validity of the ALJ's authority to issue decisions regarding SSA benefits. Filing 10 at 28. In particular, Lilly B. alleges then-Acting Commissioner Nancy Berryhill's ratification and approval of the ALJ presiding over Lilly B.'s hearing was invalid, so that any decision by that respective ALJ should be remanded for further proceedings. Filing 10 at 28. The Court will provide an abridged statement of the medical records and other evidence that are relevant to Lilly B.'s challenges to the ALJ's decision with the purpose of providing more focused and succinct discussion.

2.    *Medical Records and Evidence*

    a.  Treating Physicians' Opinions of Lilly B.'s Psychological Symptoms

From November 18, 2018, through September 22, 2021, Lilly B. periodically visited with CHI Health for psychiatric care, totaling seven visits during that timeframe. Filing 7-7 at 2-21, 43-66, 72-77 (AR 346-365, 387-410, 416-421). Progress notes from Lilly B.'s first three visits with CHI Health during that timeframe reported no significant changes in her mental health or symptomology, but the progress notes do elucidate the nature of Lilly B.'s depression prior to her alleged onset date of November 21, 2019. Filing 7-7 at 2-21 (AR 346-365) Since at least November 18, 2018, Lilly B. was diagnosed by Kim Groenjes, APRN, as having major depressive disorder (MDD) and had been engaged in a medication regimen of taking both Wellbutrin and Prozac on a daily basis to address her MDD. Filing 7-7 at 2-3 (AR 346-347). At Lilly B's next visit on May 14, 2019, she was prescribed Lamictal in addition to her other medication to address her mood swings. Filing 7-7 at 9 (AR 352). At the third visit before Lilly B.'s alleged disability onset date, she reported not having taken Lamictal due to the pharmacy not having the medication in stock. Filing 7-7 at 11 (AR 355).

    Over the span of the first three visits with CHI Health, Lilly B. reported fluctuating progress with her MDD symptoms, the progress notes reflecting the fluctuations as stating "her mood is improved and . . . [s]he denies feeling depressed," at her first visit; then reporting "she admits to depression" at the second visit; then reporting "[t]he patient remains about the same as last visit . . . [s]he endorses mood swings," at the third visit. Filing 7-7 at 3, 7, 11 (AR 347, 351, 355). Lilly B.'s MDD diagnosis appears to have been primarily based on self-reported evidence, especially on

reports of job loss, impulsive thoughts, inconsistent sleep, mood swings, irritability, and lack of motivation. Filing 7-7 at 7, 11 (AR 351, 355).

Lilly B. visited with CHI Health four more times for psychiatric care after her alleged disability onset date during a time period of March 5, 2020, to September 22, 2021. Filing 7-7 at 43-66, 72-77 (AR 387-410, 416-421). Lilly B. reported minimal improvement and symptom stability through her first two visits in the second set of appointments with CHI Health. Filing 7-7 at 42-43, 48 (AR 387-388, 392). On March 8, 2021, Lilly B.'s third visit after her alleged disability onset date, she reported her inability to "keep a job." Filing 7-7 at 53 (AR 397). Specifically, Lilly B. mentioned she was terminated due to her lack of motivation and reactivity to criticism, specifically, that she reacted to her termination by having a "meltdown" with a razor in her hand. Filing 7-7 at 53 (AR 397) (spelled out from shorthand). APRN Groenjes characterized Lilly B.'s symptomology as "causing impairment in day to day [sic] functioning," evidenced by Lilly B.'s self-reporting of the firing incident and general reporting of moderate mood fluctuations, depression, anxiety, and interpersonal conflicts. Filing 7-7 at 53 (AR 397). At Lilly B.'s final visit with CHI Medicine on September 22, 2021, she reported a stable mood and moderate symptomology of depression and anxiety. Filing 7-7 at 72 (AR 416). APRN Groenjes echoed her characterization of Lilly B.'s symptomology as "causing impairment in day to day [sic] functioning." Filing 7-7 at 72 (AR 416). Lilly B. also reported her therapist, Laura Pryor, believed Lilly B. displayed traits of autism. Filing 7-7 at 72 (AR 416). Much like the progress notes of Lilly B.'s first three visits with CHI Health, notes from the latter four visits indicate APRN Groenjes relied substantially, if not entirely on Lilly B.'s self-reporting. Filing 7-7 at 43-66, 72-77 (AR 387-410, 416-421).

5

Lilly B. began seeing therapist Laura Pryor, a Licensed Independent Mental Health Practitioner (LIMPH), since August of 2012. Filing 7-7 at 34 (AR 378). Therapist Pryor identified Lilly B.'s mental health as the primary reason why Lilly B. struggled to maintain consistent employment. Filing 7-7 at 34 (AR 378). It is worth noting that therapist Pryor did not provide progress notes from her sessions with Lilly B. for the hearing held on January 5, 2022, nor did she provide documents listing clinical testing evidence supporting her conclusion that Lilly B.'s anxiety and depression prevented her from maintaining consistent employment. Filing 7-7 at 34, 67, 69, 95-96, 99-104 (AR 378, 411, 413, 439-440, 443-448). In lieu of session notes or other clinically pertinent documentation, therapist Pryor provided a series of treating source statements describing her conclusions about Lilly B.'s mental health, including one statement that was submitted to provide supplementary explanations to answers therapist Pryor completed on a medical opinion form. Filing 7-7 at 34, 67, 69, 95-96, 99-104 (AR 378, 411, 413, 439-440, 443-448). Therapist Pryor's statements provided her diagnoses of Lilly B.'s MDD and generalized anxiety disorder. Filing 7-7 at 34, 69, 95 (AR 378, 413, 439). Therapist Pryor reported she believed Lilly B. fit the criteria for an autism spectrum diagnosis, and she referred Lilly B. to Dr. Diane Marti for further testing. Filing 7-7 at 67 (AR 411).

On December 21, 2021, therapist Pryor provided a letter (12F) that consisted of supplementary information as answers to questions listed on a "mental medical opinion" form (13F) completed by therapist Pryor. Filing 7-7 at 95-96, 99-104 (AR 439-440, 443-448). The medical opinion form contained a series of questionnaire-type checkboxes where the medical provider may fill the checkboxes according to their opinion about a claimant's symptoms, a claimant's ability to work in an employment setting, and a claimant's stress tolerance in the

6

workplace. Filing 7-7 at 99-104 (AR 443-448). Therapist Pryor indicated through her answers on the medical opinion form that Lilly B.'s generalized anxiety and MDD had limited her mental ability to do unskilled work due to "the way her brain processes body language from management [and] peers." Filing 7-7 at 101-102 (AR 445-446). Therapist Pryor indicated similar limitations regarding Lilly B.'s ability to do skilled work and her ability to travel for work. Filing 7-7 at 102 (AR 446). Therapist Pryor suggested that Lilly B.'s intellectual functioning was not limited as a result of her diagnoses. Filing 7-7 at 102 (AR 466). When asked to provide clinical findings on the mental medical opinion form, therapist Pryor wrote "[s]ee letter for detailed explanation," referring to Exhibit 12F. Filing 7-7 at 99 (AR 443).

Therapist Pryor's letter (12F) recounted her relationship with Lilly B. and provided general reasons why she completed the medical opinion form in the manner described above. Filing 7-7 at 95-96 (AR 439-440). Therapist Pryor opined Lilly B. has been unable to maintain long-term employment because "[h]er anxiety is so high in social situations," and "she also is [sic] unable to advocate for herself." Filing 7-7 at 95 (AR 439). Therapist Pryor continued to explain Lilly B.'s difficulty in social employment settings by characterizing Lilly B.'s autism: "speaking to others and self advocating [sic] is difficult, if not impossible, due to [her] impairment in social communication." Filing 7-7 at 95 (AR 439). Therapist Pryor's assertions regarding Lilly B.'s challenges in a social employment setting do not cite to any session notes, specific observations of Lilly B.'s symptomology, or past testing in relation to anxiety or autism. Filing 7-7 at 95 (AR 439). As to the clinical findings requested by the medical opinion form, therapist Pryor did not make a specific reference to the medical opinion form or to any other clinical finding outside of

her conclusions about Lilly B.'s diagnoses and her ability to function in the workplace.[2] Filing 7-7 at 95-96 (AR 439-440). Further, therapist Pryor explained she referred Lilly B. to Community Alliance "in order assist her with job coaching and life skills training," and concluded her letter with the following statement: "[Lilly B.] has the potential to eventually maintain some level of employment through the support of community based [sic] services and ongoing mental health therapy." Filing 7-7 at 96 (AR 440).

On August 4, 2020, Lilly B. completed a psychological consultative exam with Dr. Kelly Tamayo, PsyD, for further assessment. Filing 7-7 at 36 (AR 380). Dr. Tamayo described Lilly B. as having arrived on time and was accompanied by her father who corroborated Lilly B.'s self-reported symptoms. Filing 7-7 at 36 (AR 380). Dr. Tamayo noted her observations of Lilly B.'s depressed demeanor and Lilly B. becoming "easily nettled" when asked about incidents of past defiance. Filing 7-7 at 36 (AR 380). Aside from Lilly B.'s guarded nature, Dr. Tamayo identified Lilly B.'s speech was normal in rate and tone and was easy to understand. Filing 7-7 at 36 (AR 380). In terms of Lilly B.'s employment history, Dr. Tamayo noted Lilly B. had roughly sixteen jobs in a span of five years. Filing 7-7 at 37 (AR 381). Dr. Tamayo cited Lilly B.'s self-reported reasons for having an unusually high number of jobs within that time period as including anxiety, depression, difficulty getting along with coworkers, being extremely emotionally sensitive, and getting upset with her bosses when she was given criticism. Filing 7-7 at 37 (AR 381). Lilly B. emphasized she struggles with multi-tasking and that "she can't stand bosses being direct with her and she said she goes to fight or flight and tries to escape." Filing 7-7 at 37 (AR 381). Lilly B.

---

[2] Ms. Pryor added her clinical opinion that Lilly B. meets criteria for Complex Post Traumatic Stress Disorder (C-PTSD) to Exhibit 13F. The court has chosen not to address the added diagnosis in its discussion of Lilly B.'s medical records as it was not raised by either party in their Motions or Briefs supporting their Motions. *See* Filing 9; Filing 10; Filing 13; Filing 14; Filing 7-7 at 96 (AR 440).

8

reported her depression and anxiety developed when she was in her early teenage years and has continued to spend her life in a prolonged depressive state. Filing 7-7 at 37 (AR 381). Lilly B. differentiated her depression and anxiety by explaining her depression causes anhedonia, lethargy, and emotional numbing, while her anxiety causes paralysis when she is overwhelmed by stress. Filing 7-7 at 38 (AR 382).

In the employment context, Lilly B. reported that her depression gives her employers the impression she is unmotivated while her anxiety makes it difficult for her to focus on the task at hand. Filing 7-7 at 38 (AR 382). Dr. Tamayo described Lilly B.'s mental function at the time of the examination as follows:

> "Lilly [B.] was oriented in all spheres. Thoughts were organized and logical. No delusions or hallucinations noted. Fund of knowledge was average. Abstract reasoning was intact. Attention/concentration was good. Immediate, recent and remote memory were grossly intact. Lilly [B.]'s insight was fair and judgment was fair. Mood and affect were depressed and flat."

Filing 7-7 at 38 (AR 382). Dr. Tamayo concluded Lilly B. did not have any restrictions of daily living outside of Lilly B.'s limitations in social functioning. Filing 7-7 at 39 (AR 383). Dr. Tamayo based her conclusion on Lilly B's. reported daily activities, including playing on her phone, watching documentaries, doing art projects, napping, cleaning her room, and spending time with her boyfriend. Filing 7-7 at 39 (AR 383).

Dr. Tamayo diagnosed Lilly B. with moderate MDD and generalized anxiety disorder with borderline personality traits. Filing 7-7 at 39 (AR 383). Additionally, Dr. Tamayo provided a prognosis for Lilly B. in which she predicted Lilly B. "is likely to be chronically mentally fatigued and would struggle to complete work tasks in most work situations." Filing 7-7 at 39 (AR 383). Lilly B.'s prognosis also mentioned "[s]he would likely do better if able to work in isolation," and

that Lilly B. "is capable of learning and performing, simple, repetitive tasks." Filing 7-7 at 39 (AR 383). Dr. Tamayo did not conduct clinical testing for Lilly B., basing both her diagnosis and prognosis on Lilly B.'s self-reporting and from her own observations during the examination. Filing 7-7 at 36-39 (AR 380-383).

On December 19, 2021, Lilly B. visited Dr. Diane Marti, Ph.D., by a referral from therapist Pryor for the purpose of assessing Lilly B.'s potential autism spectrum disorder (ASD). Filing 7-7 at 79 (AR 423). Dr. Marti noted Lilly B.'s chief concern was her struggle to maintain employment due to her inability to understand social dynamics in an employment setting, which in turn derives from her "long-standing history of difficulty" with social and emotional relationships. Filing 7-7 at 79 (AR 423). Dr. Marti conducted several clinical examinations to assess whether Lilly B. could be diagnosed with ASD. Filing 7-7 at 83 (AR 427). The clinical examinations tested Lilly B.'s behavioral ability, attention, social functioning, and emotional functioning. Filing 7-7 at 83-90 (AR 427-434). Dr. Marti concluded Lilly B.'s difficulties understanding social dynamics and emotional relationships are a function of ASD in combination with MDD and generalized anxiety. Filing 7-7 at 91 (AR 435). In addition to Dr. Marti's diagnosis of ASD for Lilly B., she recommended Lilly B. be considered for Social Security Disability programs due to Lilly B.'s struggles with distractibility, sensory overload, anxiety management, and listening to directions or receiving direct feedback. Filing 7-7 at 91-92 (AR 435-436).

b.   Self and Lay Assessments of Lilly B.'s Functionality

Lilly B. completed a function report for use by the Social Security Administration in considering her application for disability benefits and supplemental security income on February 26, 2020. Filing 7-6 at 25-32 (AR 285-292). In her report, Lilly B. claimed her ability to work is

limited due to her becoming easily overwhelmed and from her hearing loss. Filing 7-6 at 25 (AR 285). Lilly B. indicated her tendency to become overwhelmed and her hearing loss led her to miss instructions, become forgetful when she is anxious, and an overall inability to use phones or other electronic listening devices. Filing 7-6 at 25 (AR 285). Specifically, Lilly B. reported her mental illness affects her memory, concentration, understanding, her ability to follow instructions, and her ability to get along with others. Filing 7-6 at 30 (AR 290). Further, Lilly B. provided she was discharged from employment due to problems getting along with other people, stating her employer "said it was like walking on eggshells around me [and] let me go." Filing 7-6 at 30 (AR 290). Lilly B. conceded she is able to handle minor changes, though she claims she is likely to flee from stressful situations. Filing 7-6 at 21 (AR 291). Lilly B. described her hobbies in the function report, which included watching movies and television shows, doing her makeup and hair, doing art, reading, and writing. Filing 7-6 at 29 (AR 289).

On March 28, 2021, Lilly B.'s father, Darin B., completed a third-party function report on behalf of Lilly B. regarding limitations to her abilities. Filing 7-6 at 42–49 (AR 302–309). Darin B. reported Lilly B. is able to do "most all" housework, though he indicated she does not do house or yard work because she is "not always motivated." Filing 7-6 at 44–45 (AR 304–305). Darin B. further reported Lilly B. would read, roller-skate, and go on the Internet as her hobbies. Filing 7-6 at 46 (AR 306). As to Lilly B.'s social abilities, Darin B. stated people outside of her family "make her uncomfortable," that she does not follow spoken instructions well, and that she fears authority figures. Filing 7-6 at 47–48 (AR 307–308). In response to questions about Lilly B.'s ability to handle stress and changes in her routine, Darin B. answered: "Not well at all!" Filing 7-6 at 48 (AR 308).

11

c.   Evaluations of Lilly B.'s Medical History by State Consultants

On August 6, 2020, state consulting psychologist, Lee Branham, Ph.D., found Lilly B.'s medically determinable mental impairments of depressive and anxiety disorders as severe in nature, given Dr. Branham's review of the evidence. Filing 7-3 at 6 (AR 83). Dr. Branham concluded Lilly B.'s mental impairments did not precisely satisfy the diagnostic criteria of their respective listings under 20 C.F.R. Pt. 404, Subpt. P, App. 1. Filing 7-3 at 7 (AR 84). Dr. Branham noted Lilly B. has moderate ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. Filing 7-3 at 7 (AR 84). In analyzing the evidence of record, Dr. Branham concluded Lilly B. displays some moderate mental limitations, but private consultative examiner's reports overestimated Lilly B.'s limitations, and that she could work in an employment setting with infrequent public contact and minimal instructions from a supervisor. Filing 7-3 at 6 (AR 83).

Dr. Branham concluded that Lilly B. had a mental residual functional capacity (RFC) to perform simple, unskilled work with minimal interaction with the public, peers, and supervisors. Filing 7-3 at 10 (AR 87). Dr. Branham described Lilly B. as displaying "moderate limitations with detailed instructions, sustaining attention and concentration for extended periods of time, relating appropriately with coworkers and supervisors, and adaptation." Filing 7-3 at 10 (AR 87). In supporting Lilly B.'s RFC determination, Dr. Branham cited Lilly B.'s history of distractibility and trouble accepting criticism from supervisors as evidence of her moderate limitations with concentration and social behavior. Filing 7-3 at 9–10 (AR 86–87). Accordingly, Dr. Branham determined Lilly B. is not disabled for the purposes of Social Security benefits. Filing 7-3 at 12 (AR 89).

On reconsideration of Lilly B.'s initial SSA determination, a second state consulting psychologist, Helen Montoya, Ph.D., affirmed the initial decision by Dr. Branham and found Lilly B.'s mental impairments to be moderately limitative, and that she could perform simple, unskilled work based on her review of the evidence of record. Filing 7-3 at 30–37 (AR 107–114). Dr. Montoya also concluded Lilly B.'s medically determinable mental impairments did not precisely satisfy the criteria of their respective listings under 20 C.F.R. Pt. 404, Subpt. P, App. 1. Filing 7-3 at 32 (AR 109). Dr. Montoya's evaluation of Lilly B.'s symptomology found that Lilly B.'s statements about her medically determinable medical impairments—particularly Lilly B.'s statements regarding intensity, persistence, and limiting effects—cannot be substantiated by objective medical evidence alone. Filing 7-3 at 33 (AR 110). Dr. Montoya concluded Lilly B. has a moderate mental RFC, and she supported her conclusions by evaluation of Lilly B.'s limitations with memory, concentration, social interaction, and adaption. Filing 7-3 at 34–35 (AR 111–112). Consistent with Dr. Branham's determinations, Dr. Montoya concluded Lilly B. is not disabled at the reconsideration level. Filing 7-3 at 36 (AR 113).

### d. Lilly B.'s Personal Testimony at the ALJ Hearing

On January 5, 2022, the ALJ held a hearing to review the Commissioner's denial of Lilly B.'s application for disability insurance benefits and supplemental security income benefits. Filing 7-2 at 50 (AR 49). Lilly B. appeared at the hearing via an online video service and was represented by her attorney. 7-2 at 52 (AR 51). Lilly B. testified she was employed as a part-time housekeeper at Candlewood Suites at the time of the hearing, and that she goes to work two to three times a week for six-hour shifts. Filing 7-2 at 55 (AR 54). Lilly B. explained she had been working as a part-time housekeeper for the six months preceding the ALJ hearing, albeit at different hotels. 7-2

at 56 (AR 55). Lilly B. described her work productivity as the "minimum of what [her employer] expect[s]," and that her employer is "too nice to turn me away." 7-2 at 57 (AR 56). Later in the hearing, Lilly B. explained that her physical symptoms stemming from her anxiety affect her ability to work at an acceptable pace at her current place of employment. 7-2 at 67–68 (AR 66–67). Lilly B. then testified she worked for Thrift Holdings in 2017 for approximately a year and one month before she resigned. 7-2 at 57 (AR 56). In explaining her resignation from Thrift Holdings, Lilly B. testified a new manager began to supervise her during the last four months of her employment, and that the new manager forced Lilly B. to perform customer service tasks that she did not like. 7-2 at 58 (AR 57).

Lilly B. further testified about the physical and mental symptoms she experiences while she is working, including stomach pain due to anxiety; overthinking and losing concentration when she interacts with coworkers; headaches; and sweaty palms. 7-2 at 61 (AR 60). Lilly B. explained that her physical and mental symptoms cause her to leave work early, call out of work, or hide in the bathroom. 7-2 at 61, 64 (AR 60, 63). Lilly B. described the nature of her anxiety as being easily provoked due to her sensitivity to managers' criticism or out-of-work stressors. 7-2 at 62–63 (AR 61–62). Lilly B. testified her anxiety-related symptoms also limit her ability to function outside of the workplace, including her daily functions within the home such as cleaning, cooking, and keeping up with hygiene. 7-2 at 65 (AR 64). When asked about the particular difficulties she has with personal hygiene, Lilly B. testified her depression leaves her feeling unmotivated to take care of her hygiene, such as brushing her hair or teeth. 7-2 at 72 (AR 71). Lilly B. testified her medications are helpful "to an extent." 7-2 at 65 (AR 64). Lilly B. spoke to her hearing issues, describing her hearing loss as having an "immense" effect on her anxiety due to mishearing people.

7-2 at 66 (AR 65). When the ALJ inquired about Lilly B.'s life away from work, she testified that she paints, sketches, and listens to music and podcasts to occupy herself. 7-2 at 70 (AR 69). As for Lilly B.'s social life, she testified that she struggles to maintain friendships as a result of her autism, though she does have a boyfriend with whom she goes on weekly dates. 7-2 at 71 (AR 70). The ALJ asked Lilly B. if she would move out of her father's house and support herself if she had the financial means to, and she answered in the affirmative. 7-2 at 73 (AR 72).

3. *The ALJ's Impairment Findings*

Under 20 C.F.R. § 416.920(b), an ALJ will conduct a five-step analysis to determine whether a claimant is disabled. *See Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (citing *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)). The ALJ will consider the following during that analysis:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Grindley*, 9 F.4th at 628 (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (internal citation omitted)). The claimant generally bears the burden of proving he or she is disabled at the first four steps of the process, while the ALJ bears the burden of proving a claimant is not disabled at step five. 20 C.F.R. §§ 416.912(a)-(b), 416.960(c)(2). If the ALJ finds the claimant is not disabled at steps one, two, four, or five, or finds the claimant is disabled at steps three or five, the ALJ will end the analysis. 20 C.F.R. § 404.1520(a).

At the first step of the five-step sequential process, an ALJ will find a claimant is not disabled if the claimant is working and that work is considered substantial gainful activity. 20

C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Substantial work activity is defined as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). Gainful work activity is defined as "work activity that you do for pay or profit." 20 C.F.R. § 404.1572(b). In this case, the ALJ determined Lilly B. had not engaged in substantial gainful activity, which allowed the ALJ to proceed to the second step of the analysis. Filing 7-2 at 20 (AR 19). Although the ALJ recognized that Lilly B. had worked since the alleged onset date, her wage earnings were insufficient to meet the minimum threshold for substantial gainful activity. Filing 7-2 at 20 (AR 19).

At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). A claimant's impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If an ALJ finds the claimant's medically determinable impairment or combination of impairments as not severe, the claimant is not disabled. 20 C.F.R. § 416.920(c). In this case, the ALJ determined Lilly B.'s anxiety, depression, and ASD are severe since they significantly limit her ability to perform basic work activities, which permitted the ALJ to continue to step three. Filing 7-2 at 20 (AR 19). Unlike Lilly B.'s medically determinable mental impairments, the ALJ found Lilly B.'s hearing loss was not severe because "[Lilly B.] was able to answer all questions posed to her during the hearing without great difficulty," her medical providers did not identify any significant hearing issues, and she has functioning hearing aids. Filing 7-2 at 20 (AR 19).

At the third step of the process, the ALJ will ascertain whether the claimant's impairment or combination of impairments is of a severity to meet the listed criteria in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment does meet the listed criteria the ALJ will find the claimant is disabled; if, however, the ALJ determines the claimant's impairment does not meet the listed criteria then the ALJ proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ found that none of Lilly B.'s mental impairments, singly or in combination, are of a severity to meet the listed criteria under 20 C.F.R. Pt. 404, Subpt. P, App. 1, which prompted the ALJ to proceed to step four of the analysis. Filing 7-2 at 21 (AR 20).

### 4.   The ALJ's RFC Findings

At step four of the five-step analysis, the ALJ will first determine the claimant's residual functional capacity (RFC), then assess the claimant's RFC in consideration of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A claimant's RFC is her ability to do physical and mental work despite limitations from her impairments. 20 C.F.R. § 404.1545(a). "A disability claimant has the burden to establish her RFC.*" Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)); *see also* 20 C.F.R. § 404.1512(a). The ALJ determines a claimant's RFC by using all relevant evidence in the claimant's case record, "including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger*, 390 F.3d at 591; *see also* 20 C.F.R. § 404.1545(a). The ALJ concluded the following pertaining to Lilly B.'s RFC determination:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is able to understand, remember, and persist at a consistent pace while performing tasks that

> are simple, straightforward, and uncomplicated. She is able to exercise proper judgment in performing those tasks and to respond appropriately to routine changes in the workplace and to routine supervision. She is able to respond and behave appropriately without being distracted or distracting others when performing tasks that do not require more than incidental and superficial interaction with co-workers or the public.

Filing 7-2 at 23 (AR 20).

Following the ALJ's determination of the claimant's RFC, the claimant's RFC will be compared to their past relevant work. 20 C.F.R. § 404.1520(f); *see also* 20 C.F.R. § 404.1560(b). Past relevant work is substantial gainful activity claimant performed within the past fifteen years or fifteen years prior to the date disability must be established, and that substantial gainful activity lasted long enough for the claimant to learn to do the work. 20 C.F.R. § 416.960(b)(1); *see generally* 20 C.F.R § 416.965(a). If the claimant has the RFC to do her past relevant work the ALJ will conclude the claimant is not disabled and the analysis ends, but if the claimant is unable to do any past relevant work or does not have any past relevant work the ALJ proceeds to the fifth and final step. 20 C.F.R. § 404.1520(f). Here, notwithstanding Lilly B. having "held many jobs over the years," the ALJ determined she has no past relevant work experience since her former employment did not constitute substantial gainful activity. Filing 7-2 at 29 (AR 28). For that reason, the ALJ proceeded to the last step of the five-step analysis to determine Lilly B.'s disability status. Filing 7-2 at 29 (AR 28).

### 5. *The ALJ's Findings Regarding Ability to do Other Work*

At the fifth and last step of the disability analysis, the ALJ considers the claimant's RFC, age, education, and work experience to determine if claimant is capable of adjusting to other work. 20 C.F.R. § 404.1520(a)(4)(v). Once a claimant proves her inability to do past relevant work, the burden of proof switches from the claimant to the Commissioner to establish claimant possesses

18

an RFC to do other work and that the other work exists in substantial numbers in the national economy, though this burden is limited, and the claimant still bears the ultimate burden of persuasion to establish she is disabled. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citation omitted); *see also* 20 C.F.R § 404.1560(c). If the claimant can make an adjustment to other work that exists in the national economy, the ALJ will find claimant to be not disabled. 20 C.F.R. § 404.1520(g). Conversely, if the claimant cannot adjust to other work or that other work does not exist in the national economy, the ALJ will find the claimant is disabled. 20 C.F.R. § 404.1520(g); *see generally* 20 C.F.R. § 404.1566. In determining a claimant's ability to adjust to other work and if other work exists in the national economy, an ALJ may call on a vocational expert (VE) to testify at the administrative hearing. 20 C.F.R. § 404.1566(e). The VE's role is "to take into account medical limitations, including opinions as to work time limits, and offer an opinion on the ultimate question whether a claimant is capable of gainful employment." *Swedberg v. Saul*, 991 F.3d 902, 905 (8th Cir. 2021) (quoting *Smallwood v. Chater*, 65 F.3d 87, 89 (8th Cir. 1995)).

In the present case, VE Theresa Wolford testified at the administrative hearing as to Lilly B.'s ability to adjust to other work and if other work existed in substantial numbers in the national economy. Filing 7-2 at 74–77 (AR 73–76). The ALJ asked Ms. Wolford if any jobs were available for a hypothetical person of Lilly B.'s age, education, and with no exertional limits, but who can only understand, remember, and persist at a consistent pace when performing simple, straightforward, and uncomplicated tasks; exercise proper judgement and respond appropriately to routine changes and supervision, so long as tasks are simple; and is able to respond and behave appropriately when performing tasks, so long as those tasks do not require any more than incidental and superficial interaction with coworkers or the public. Filing 7-1 at 74–75 (AR 73–74). In

19

response to the ALJ's question, Ms. Wolford cited three occupations that she believed Lilly B. would be able to adjust to: "cleaner industrial" (381.687-018); "routing clerk" (222.687-022); and "document preparer" (249.587-018), the total number of available jobs across the three cited examples came to 797,290. Filing 7-2 at 75 (AR 74).[3] In addition to citing the three example occupations, Ms. Wolford noted the DOT does not address interaction with coworkers, supervisors, or the public in its occupational listings, and had thus based the provided example occupations in part upon her experience. Filing 7-2 at 75 (AR 74). The ALJ asked a second question following Ms. Wolford's initial response, specifically inquiring as to the factual basis for her opinion on the topics concerning a claimant's interaction with coworkers, supervisors, or the public. Filing 7-2 at 75 (AR 74). Ms. Wolford based her opinion concerning Lilly B.'s limitation with social interactions on her twenty years of experience working with employers and disabled individuals. Filing 7-2 at 75–76 (AR 74–75).

In light of the VE's testimony and Lilly B.'s RFC, age, education, and work experience, the ALJ concluded Lilly B. "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Filing 7-2 at 30 (AR 29). According to the ALJ's findings as to Lilly B.'s ability to do other work, Lilly B. was found to be not disabled in the final step of the five-step sequential analysis. Filing 7-2 at 30 (AR 29); *see generally* 20 C.F.R. § 404.1520(g)(1).

---

[3] The Social Security Administration primarily relies on the Dictionary of Occupational Titles (DOT) for gathering information about occupations in the national economy. Every occupational title in the DOT has a corresponding nine-digit identification number. How to Find an Occupational Title and Code, Information Technology Associates (Apr. 11, 2020), https://occupationalinfo.org/front_580.html.

20

## II.  LEGAL ANALYSIS

### A.  Standard of Review

A Social Security claimant must proceed through four levels of administrative review before the claimant may obtain judicial review in federal district court, including an Appeals Council review of the ALJ's decision. *Smith v. Berryhill*, 139 S.Ct. 1765, 1772 (2019); *see also* 42 U.S.C. § 405(g). Once at the federal district court level, the court will "decide whether the [ALJ]'s findings 'are supported by substantial evidence on the record as a whole.'" *Bowers v. Kijakazi*, 40 F.4th 872, 874 (8th Cir. 2022) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). "Substantial evidence [on the record as a whole] is less than a preponderance of the evidence" and is "'such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion.'" *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (quoting *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (internal citations and quotations omitted)). "Substantial evidence in the record as a whole" is a more rigorous standard than simply "substantial evidence" since the former standard requires consideration of evidence that supports or detracts from the ALJ's determination, whereas the latter does not**.** *Schmitt v. Kijakazi*, 27 F.4th 1353, 1358 (8th Cir. 2022) (quoting *Koch v. Kijakazi*, 4 F.4th 656, 663 (8th Cir. 2021) (cleaned up and internal quotations omitted) ("Substantial evidence in the record as a whole" is a more "rigorous" standard than simply "substantial evidence," which is "evidence that a reasonable mind might accept as adequate to support the Commissioner's conclusion.")). The district court "will not reverse the [ALJ]'s decision merely because [the court] find[s] that 'substantial evidence exists in the record that would have supported a contrary outcome.'" *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (citing *Schmitt*, 27 F.4th at 1358) (internal quotations omitted)). Rather, "'[i]f,

after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

Additionally, the district court must determine whether the ALJ's decision "complies with the relevant legal standards." *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (internal citations omitted)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Id.* (quoting *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (where the ALJ committed legal error by not posing a hypothetical question to the vocational expert) (omission in original)). "In conducting our limited and deferential review of the final agency determination under the substantial-evidence standard, we must view the record in the light most favorable to that determination." *Dols*, 931 F.3d at 748 (quoting *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam)).

## B.  Discussion

Lilly B. asserts three grounds for reversing and remanding the ALJ's decision, as stated in the factual background, *supra*. First, Lilly B. argues the ALJ erred by "not articulat[ing] sufficient reasons" for concluding three medical opinions as not persuasive. Filing 10 at 16–27. Second, Lilly B. contends the ALJ erred by improperly finding Lilly B. was not credible in reporting her limitations. Filing 10 at 27. Third, Lilly B. posits the ALJ did not have authority to issue a decision for her disability claims because, as alleged by Lilly B., then-Acting Commissioner Nancy

Berryhill's ratification and approval of the ALJ presiding over Lilly B.'s hearing was invalid. Filing 10 at 28.

    *1.    The ALJ's Evaluation of Medical Opinions*

    Lilly B.'s first opines that the ALJ "failed to articulate sufficient reasons" to find the medical opinions of therapist Pryor, Dr. Tamayo, and Dr. Marti were not persuasive. Filing 10 at 16–27. That is to say, Lilly B. asserts the ALJ's decision is not supported by substantial evidence on the record as a whole. Filing 10 at 16–27. More specifically, Lilly B. avers the ALJ failed to weigh requisite factors to arrive at the conclusion that the medical opinions are not persuasive, particularly because the ALJ did not consider the medical opinions in light of their supportability and consistency, *inter alia*, in determining Lilly B.'s disability. Filing 10 at 16–27. Lilly B. argues that the ALJ improperly evaluated the medical opinion of therapist Pryor by not specifically addressing 13F in the disability determination, thus the ALJ did not consider Pryor's medical opinion's supportability or consistency. Filing 10 at 16. Lilly B. then claims the ALJ erred by finding Dr. Tamayo's medical opinion to offer only vague conclusions because the ALJ did not address Dr. Tamayo's specific opinions regarding Lilly B.'s supervisor-related limitations in the workplace, and because the ALJ reasoning that Dr. Tamayo's opinion as to Lilly B.'s ability to learn and perform simple tasks at home was indicative of her ability to do so in the workplace. Filing 10 at 22. Finally, Lilly B. asserts that the ALJ erred by finding Dr. Marti's opinion was not persuasive due to Dr. Marti's phrasing of Lilly B.'s limitations as "cannot do" rather than "at most, claimant can do." Filing 10 at 25. In other words, the ALJ erroneously found Dr. Marti's opinion was not persuasive because the ALJ opined Dr. Marti did not explain what Lilly B. is still capable of doing. *Compare* Filing 10 at 25 (Plaintiff's brief asserting the ALJ's disregard of Dr. Marti's

opinion due to its phrasing is nonsensical), *with* Filing 7-2 at 27 (AR 26) (The ALJ determines Dr.

Marti's opinion is partially not persuasive because it concludes Lilly B. struggles with some tasks

without pointing to specific evidence).

> a.   The ALJ Correctly Evaluated Laura Pryor's Medical Opinion

Lilly B. avers the ALJ erroneously determined therapist Pryor's medical opinion was

unpersuasive because the ALJ did not specifically address 13F in the disability determination, thus

the ALJ did not consider the medical opinion's supportability or consistency. Filing 10 at 16. Lilly

B. argues 13F, a medical checkbox opinion, provided reference to particular mental limitations

and the ALJ did not address these limitations because he "simply overlooked" 13F by lumping the

medical opinion together with other documents provided by Pryor to conduct a more generalized

analysis. Filing 10 at 18, 21. In her brief, Lilly B. brings attention to particular excerpts of Pryor's

medical opinion:

> Ms. Pryor explained [Lilly B.] had 'significant barriers for her in being gainfully
> employed' . . . [Lilly B.] was unable to meet competitive standards in completing a
> normal workday and workweek without interruptions from psychologically based
> symptoms, ask simple questions or request assistance, or accepting instructions and
> responding appropriately to criticism from supervisors . . . [s]he had difficulty
> handling stressors . . . [s]he would be expected to miss more than four days per
> month due to her impairments.

Filing 10 at 14. Lilly B. maintains that the ALJ's failure to specifically address 13F's supportability

and consistency was not harmless error, thus remand is an appropriate remedy for the ALJ's

oversight. Filing 10 at 21–22. In arguing that the ALJ's treatment of 13F was not harmless error,

Lilly B. further asserts that 13F suggests limitations greater than the ALJ's RFC determination and

would have weighed in favor of Lilly B. being found to be disabled due to its consistency with

other medical opinions in the record that list more restrictive limitations than the ALJ's determination of Lilly B.'s RFC. Filing 10 at 22.

Lilly B.'s contentions about the ALJ's treatment of 13F are not supported by the record, for although the ALJ decided to lump 13F together with other treating source statements, the ALJ's evaluation of Pryor's medical opinion addresses its supportability and consistency as required by § 404.1520c. *See* Filing 7-2 at 28 (AR 27); *see also* 20 C.F.R. § 404.1520c(b)(1) ("[the ALJ is] not required to articulate how [the ALJ] considered each medical opinion or prior administrative medical finding from one medical source individually."). The ALJ explains 13F's supportability, among other treatment source statements, as "rely[ing] heavily on the claimant's own self-reported behaviors and symptoms," and that the "opinion does not cite to any specific objective medical evidence, and is conclusory and vague in nature." Filing 7-2 at 28 (AR 27); *see generally* 20 C.F.R. § 404.1520c(c)(1) (supportability is focused on the persuasiveness of a medical opinion; the more objective the opinion, the more persuasive it is). The ALJ then describes 13F's consistency with other portions of the record, determining that:

> [T]hey are not consistent with the claimant's own reports that she has been able to successful in work where she interacts with people less and can work independently, her own reports that she is able to interact with others appropriately when she shops, dines out, and engages in social activities such as miniature golf (Testimony, Ex. 4E). They are also not consistent with her ability to sustain concentration and attention on activities that interest her, such as drawing, painting, and caring for her pets (Testimony, Ex. 4E).

Filing 7-2 at 28 (AR 27); *see generally* 20 C.F.R. § 404.1520c(c)(1). The ALJ's evaluation of 13F is accurate, for at no point in 13F did Pryor provide "objective medical evidence and supporting explanations" for the ALJ to consider a more limitative RFC determination outside of any conclusory statements. Filing 7-7 at 97–105 (AR 441–449); *see also* 20 C.F.R. § 404.1520c(c)(1).

Since there is no specific articulation requirement as suggested by Lilly B., and the ALJ did address 13F's supportability and consistency, albeit the analysis was contemporaneous with other documents provided by Pryor, the ALJ's conclusion regarding 13F is supported by substantial evidence on the record as a whole. Filing 7-2 at 28 (AR 27); *see also* 20 C.F.R. § 404.1520c(b)(1).

Even if the ALJ treated 13F as Lilly B. claims, 13F holds so little persuasive or informative value that such treatment by the ALJ would be harmless. The Eighth Circuit Court of Appeals has clearly stated that a medical checkbox opinion is "entitled to relatively little evidentiary value on its face" when it is conclusory and "'cite[s] no medical evidence, and provide[s] little to no elaboration.'" *Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022) (quoting *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010)). Further, it is not error for an ALJ to "rely more heavily on other opinions in the record" when the ALJ has found a checkbox opinion to be conclusory. *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (citing *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014)). In the case at hand, given that medical checkbox opinions such as 13F are facially insignificant in terms of their evidentiary value, Pryor's lack of elaboration in 13F, and its inconsistency with Lilly B.'s testimony at the administrative hearing, there is ample ground for the ALJ's determination that 13F holds little evidentiary weight. Filing 7-2 at 28 (AR 27). The ALJ's decision has even greater support in light of the fact that Pryor provided no progress notes and had merely supplemented her medical opinions with conclusory treating source statements. Filing 7-2 at 28 (AR 27); *see generally* Filing 7-7 at 34–35, 67–68, 69–70, 93–96, 97–104 (AR 378–379, 411–412, 413–414, 437–440, 441–448). The ALJ's summary analysis of 13F has greater justification since the ALJ could not supplement or compare 13F's conclusions with observations Pryor may have recorded during therapy sessions, and the letters Pryor submitted in lieu of such

progress notes lacked enough specificity to accomplish a more detailed analysis. *Id.* Thus, since Pyror's checkbox opinion has such little evidentiary weight and has no support from progress notes, any assertion of a more limited RFC in the medical opinion would not have altered the ALJ's ultimate determination and therefore, even if it was an erroneous decision, would be harmless.

Lilly B. attempts to distinguish her case from *Austin v. Kijakazi*, 52 F.4th at 729—where the Eighth Circuit found that an ALJ's lack of attention to a part of a medical opinion was permissible—because the ALJ in the case at hand "completely overlooked all of the specific limitations offered by Ms. Pryor in her medical opinion form." Filing 10 at 21. Contrary to Lilly B.'s assertions, her case is not distinguishable from Austin, nor did the Eighth Circuit hand down Austin to support the proposition that an ALJ must always address specific portions of a medical opinion for a determination to be legally valid. *Id.* Rather, the court in Austin suggested "the ALJ is free to accept some, but not all, of a medical opinion." *Id.* (citing *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (stating the ALJ is "not required to accept every opinion given" but "must weigh all the evidence in the record")). The court further noted "the ALJ is not required to 'explicitly ... reconcile every conflicting shred' of medical evidence." *Id.* (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). Most significantly, to support its conclusion that an exhaustive analysis of each medical opinion is not required, the Eighth Circuit in Austin relies on 20 C.F.R. § 404.1520c(b)(1): "[The ALJ is] not required to articulate how [he] considered each medical opinion ... from one medical source individually." *Id.* Therefore, Lilly B.'s argument is unavailing in that the ALJ's determinations regarding Pryor's medical opinion are consistent with the requirements enunciated by the Eighth Circuit in Austin.

      b.  The ALJ Correctly Evaluated Dr. Kelly Tamayo's Medical Opinion

Lilly B. next argues the ALJ erroneously found Dr. Tamayo's medical opinion was unpersuasive because the ALJ failed to explicitly address Dr. Tamayo's particular opinions regarding Lilly B.'s supervisor-related limitations, and because the ALJ conflated Dr. Tamayo's opinions on Lilly B.'s ability to do simple repetitive tasks at home with her ability to do such tasks in the workplace. Filing 10 at 22. Lilly B. maintains that Dr. Tamayo's opinions regarding Lilly B.'s supervisor-related limitations are consistent with substantial evidence in the record, arguing that Dr. Tamayo's conclusion is consistent with the findings of state consultative examiners, therapist Pryor's medical opinion, and Dr. Marti's recommendations. Filing 10 at 23–24. Additionally, Lilly B. urges that Dr. Tamayo's conclusion about supervisor-related limitations are supported by her interview with Lilly B. and the sporadic nature of Lilly B.'s work history. Filing 10 at 23–24. Lilly B. noted that "Dr. Tamayo explained [Lilly B.'s] defensiveness and anxiety with supervisors and criticism as at least in part a response to childhood trauma and acting out towards teachers, with a lasting 'deep insecurity as she entered adulthood.'" Filing 10 at 23–24 (quoting Filing 7-7 at 39 (AR 383)). As to Lilly B.'s ability to perform and learn simple tasks at home as opposed to her ability to do the same in the workplace, she attacks the ALJ's conflation of the two situations. Filing 10 at 22. Again, Lilly B. asserts that the ALJ's determination is "just untrue", and that "Dr. Tamayo opined [Lilly B.] could perform simple, repetitive tasks, but the problem was she was limited in her ability to learn such tasks and would struggle performing such tasks in a work setting." Filing 10 at 24 (citing Filing 7-7 at 39 (AR 383)).

The ALJ's conclusion that Dr. Tamayo's medical opinion is unpersuasive is not erroneous and is supported by substantial evidence on the record as a whole. The Eighth Circuit has generally

recognized, "[a] conclusory report from a treating physician may still be entitled to controlling weight if it is accurate when viewed in the context of the medical record." *Despain v. Berryhill*, 926 F.3d 1024, 1028 (8th Cir. 2019) (citing *Cox v. Barnhart*, 345 F.3d 606, 609 (8th Cir. 2003)). However, the Eighth Circuit has limited the general rule in finding "[a]n ALJ properly discredits such a report, though, if it is unsupported by the medical record." *Id.* (citing *Stormo v. Barnhart*, 377 F.3d 801, 805–06 (8th Cir. 2004)). Additionally, "'an ALJ is not required to discuss every piece of evidence submitted [. . .] Moreover, '[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.'" *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998) (internal citations omitted)). A court will "review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (citing *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir.2003)).

Here, the ALJ did not need to address the supervisor-related limitation in his RFC determination because Dr. Tamayo's notation about such a limitation was conclusory and only one observation in the entirety of her medical opinion. Filing 7-7 at 36–42 (AR 380–386). Dr. Tamayo's own discussion regarding the supervisor limitation is considerably limited, merely mentioning that "[Lilly B.] also described being extremely emotionally sensitive and would take any criticism personally and would get upset with her bosses," and that "she can't stand bosses being direct with her." Filing 7-7 at 37 (AR 381). Dr. Tamayo's recitations of Lilly B.'s supervisor limitation led her to conclude that "[s]he would likely do better if able to work in isolation." Filing 7-7 at 39 (AR 383). The ALJ's decision not to address this conclusion by Dr. Tamayo is not

erroneous because the ALJ is not required "to mechanically list and reject every possible limitation." *McCoy*, 648 F.3d at 615 (8th Cir. 2011). The main thrust of Dr. Tamayo's medical opinion concerned Lilly B.'s ability to learn and perform tasks in the work setting; Lilly B.'s discomfort with supervisors was only a tangential consideration. Filing 7-7 at 39 (AR 383). Further to that point, though the ALJ did not address any supervisor limitation in the analysis of Dr. Tamayo's medical opinion, the limitation was addressed and was even conceded in other parts of the RFC determination. Filing 7-2 at 23–29 (AR 22–28). For instance, the ALJ agreed with state consultative examiners when they concluded Lilly B. has "poor social functioning and would likely work best in isolation," which is consistent with the conclusion of Dr. Tamayo. Filing 7-2 at 27 (AR 26). In short, the ALJ did not err when deciding to omit any discussion on a supervisor-related limitation in analyzing Dr. Tamayo's medical opinion because the limitation was only a small part of Dr. Tamayo's opinion and was discussed in other portions of the RFC determination.

The ALJ also did not err when determining Dr. Tamayo's conclusion that Lilly B. has "limited ability to learn and perform even simple, repetitive tasks," is inconsistent with the record and is unsupported by any specific observations. Filing 7-2 at 28 (AR 27) (quoting Filing 7-7 at 39 (AR 383)). The ALJ properly discredited Dr. Tamayo's medical opinion because it was "in stark contrast with all other evidence in the record." Filing 7-2 at 28 (AR 27). The ALJ pointed to Dr. Tamayo's own observations of Lilly B.'s self-reported activities, noting that "she has demonstrated success in work settings where she had some combination of tasks that were repetitive and she had little to no interaction with others, she is capable of completing tasks that interest her such as caring for her pets, taking her medications, managing her personal care needs, and various art projects." Filing 7-2 at 28 (AR 27) (citing Filing 7-7 at 39 (AR 383). Other parts

of the record that contradict Dr. Tamayo's conclusion are the state consultative examiners' findings that Lilly B. "is able to complete tasks when they interest or directly benefit her, such as shopping independently." Filing 7-2 at 27 (AR 26). The ALJ characterized the supportability of Dr. Tamayo's conclusion as "her opinions are other vague conclusions [and] are no more than a summary of what the claimant shared during the assessment, and are not based on any specific observations." Filing 7-2 at 28 (AR 27). Since Dr. Tamayo's findings regarding Lilly B.'s ability to perform tasks in the workplace are inconsistent with the record and are only supported by Lilly B.'s self-reported symptomology, the ALJ's determination about the medical opinion's persuasiveness is supported by substantial evidence and is not legal error.

     c.   The ALJ Correctly Evaluated Dr. Diane Marti's Medical Opinion

Lilly B. next argues the ALJ erroneously found Dr. Marti's medical opinion was unpersuasive because the ALJ opined Dr. Marti failed to describe what Lilly B. is still capable of doing. Filing 10 at 25. In particular, Lilly B. asserts that the ALJ's determination is erroneous because the ALJ improperly discredits the medical opinion for its failure to explain what Lilly B. can do, and for discrediting the opinion by improperly concluding Lilly B.'s activities outside work reflect her ability to do tasks at work. Filing 10 at 25–26. The Commissioner responds by arguing that the ALJ's determination is supported by substantial evidence on the record as a whole because Dr. Marti's opinion was analyzed for its consistency and supportability as required under 20 C.F.R. § 404.1520c. Filing 14 at 11.

To reiterate, the ALJ may give a physician's conclusory medical opinion "controlling weight if it is accurate when viewed in the context of the medical record." *Despain*, 926 F.3d at 1028. The ALJ is not required to give the medical opinion controlling weight to the extent "it is

unsupported by the medical record." *Id.* Further, the ALJ's determination is not erroneous simply because "evidence exists in the record that would have supported a contrary outcome.'" *Austin,* 52 F.4th at 728. As mentioned, *supra,* if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Dols,* 931 F.3d at 744.

As both Lilly B. and the Commissioner acknowledge, the ALJ did not find Dr. Marti's medical opinion wholly unpersuasive, as the ALJ found the opinion to be unpersuasive only to the extent that Dr. Marti concluded Lilly B. struggles with completing tasks. Filing 7-2 at 27 (AR 26). As discussed, *supra,* the ALJ determined that the conclusion Lilly B. struggles with performing tasks at work is inconsistent with the record as she is able to shop alone, go on dates, care for pets, do art, read, and work in positions where she is able to do tasks independently. Filing 7-2 at 27 (AR 26). The ALJ also found Dr. Marti's conclusion to be lacking in support, as she did not cite to any specific limitations in Lilly B.'s ability to complete work tasks. Filing 7-2 at 27 (AR 26). The ALJ's conclusion is accurate, as Dr. Marti's report states:

> Lilly struggles with attention and focus as she has trouble listening to directions, becomes easily distracted or may become "stuck" within obsessive thinking patterns. This results with a short attention span and can be easily "stuck" when feeling overwhelmed. Lilly struggles with her executive function skills and can struggle with finishing tasks, may struggle with getting started on larger projects.

Filing 7-7 at 91 (AR 435). Aside from stating Lilly B. may become "stuck," there is no detail as to what type of work tasks Lilly B. would be unable to do. Filing 7-7 at 91 (AR 435). The principle enunciated in *Austin* and *Dols* is apposite in terms of Lilly B.'s bemoaning of the ALJ's treatment of Dr. Marti's opinion; Lilly B. simply has a fundamentally different view of the evidence compared to the ALJ's, which is not grounds for reversing the ALJ's decision. *See Austin,* 52 F.4th

at 728; *see also Dols*, 931 F.3d at 744.  Lilly B. points to *Ross v. Apfel* to assert that the ALJ cannot rely on Lilly B.'s outside activities as a reflection of her abilities in the workplace. *Ross v. Apfel*, 218 F.3d 844, 849 (8th Cir. 2000). The current case is distinguishable from *Ross* because the ALJ in *Ross* determined that severe pain and fatigue from sickle cell anemia was inconsistent with the plaintiff's testimony that he could do light and sporadic activities, a conclusion that was contradicted by the testimony of plaintiff's girlfriend and uncle. *Ross*, 218 F.3d at 849. Here, the ALJ did not rely on inconsistency from Lilly B.'s testimony alone, but on several sources in the record which all indicate Lilly B.'s ability to concentrate when she works independently and is acting within her own self-interest rather than at the behest of a coworker. Filing 7-2 at 23–29 (AR 22–28). Since Dr. Marti's medical opinion as to Lilly B.'s ability to complete tasks is inconsistent with the record and is not supported by objective medical evidence, the ALJ's determination is supported by substantial evidence on the record as whole.

### 2.    The ALJ's Assessment of Lilly B.'s Subjective Complaints

In the next section of Lilly B.'s argument, she asserts that the ALJ erred by not properly evaluating Lilly B.'s subjective complaints because the ALJ improperly weighed evidence to discredit Lilly B.'s complaints. Filing 10 at 27. In particular, Lilly B. contends that the ALJ "turned this record on its head, finding the part-time work that [Lilly B.] attempted—nevermind [sic] that these work attempts resulted in unsuccessful failures—supported an ability to perform full-time competitive work." Filing 10 at 28 (citing Filing 7-2 at 26–27 (AR 25–26)). Lilly B. also asserted that her subjective complaints are supported by the fact that she "was not independent in anything outside her house," noting that she does not have a driver's license, pay bills or use a checkbook, cook for herself, and needs assistance to function at part-time work. Filing 10 at 28. The

Commissioner responds by arguing that the ALJ properly evaluated Lilly B.'s subjective complaints and that any alleged failed work attempts are outweighed by other evidence the ALJ relied on for the RFC determination. Filing 14 at 13.

A reviewing court "normally defer[s] to an ALJ's credibility determination." *Grindley*, 9 F.4th at 630 (citing *Halverson*, 600 F.3d at 932) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination") (citation omitted). The Eighth Circuit in Polaski v. Heckler created a standard for an ALJ's evaluation of a Social Security claimant's subjective complaints that requires an ALJ to consider all evidence relating to the following factors: "(i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017) (citing *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016); see *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "An ALJ need not expressly cite the Polaski factors when [. . .] the judge conducts an analysis pursuant to 20 C.F.R. § 416.929, because the regulation 'largely mirror[s] the Polaski factors.'" *Vance*, 860 F.3d at 1120 (quoting *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); see 20 C.F.R. § 416.929(c)(3)(i)-(iv), (vii).

In the case at hand, the ALJ properly weighed Lilly B.'s subjective complaints and found that her testimony is inconsistent with the record as a whole. Filing 7-2 at 26–27 (AR 25–26). The ALJ determined that Lilly B.'s subjective complaints about the limiting effects of her symptoms lacked credibility since they were inconsistent with her own testimony and the medical opinion of Dr. Tamayo. Filing 7-2 at 26–27 (AR 25–26). Lilly B. faults the ALJ for failing to give her many

34

job-related shortcomings more weight, but as the ALJ notes, "she has successfully been working part-time cleaning hotel rooms for several months and has provided no information that indicates that her work is unsatisfactory." Filing 7-2 at 26–27 (AR 25–26). The ALJ pointed to Dr. Tamayo's medical opinion as well, which found that "she has no restrictions on activities of daily living, though she has poor social functioning and can become easily overwhelmed with complex information or tasks though can adapt to changes in the environment around her." Filing 7-2 at 26–27 (AR 25–26). Most significantly, the ALJ recounted Lilly B.'s testimony where she explained her most successful employment experience was in a position where she was allowed to work independently, which is reflected in the ALJ's RFC determination and the record as a whole. Filing 7-2 at 26–27 (AR 25–26). Even if Lilly B. is correct in asserting that the ALJ did not afford as much weight as may be desirable in the subjective complaint analysis, there is nothing in the record to suggest the ALJ's credibility determination should be disturbed. *See Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (2018) ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence." (citation omitted)). In sum, the ALJ's conclusion about Lilly B.'s subjective complaint is supported by substantial evidence on the record as whole.

### 3. The ALJ was Properly Appointed

In Lilly B.'s final argument, she contends that former Acting Commissioner Berryhill did not have authority to appoint the ALJ who presided over Lilly B.'s administrative hearing. Filing 10 at 28. Lilly B. suggests that the Federal Vacancies Reform Act (FVRA) did not permit the former Acting Commissioner to appoint ALJs because she was not properly serving as Acting

Commissioner during the period when she issued the order to ratify the judgeships under the provisions of FVRA. Filing 10 at 28.

Lilly B. concedes the issue she raises has been answered directly by the Eighth Circuit, which held "Berryhill was properly serving as Acting Commissioner when she ratified the appointment of the SSA ALJs." Filing 10 at 29; *see Dahle v. Kijakazi*, 62 F.4th 424, 429 (8th Cir. 2023). Moreover, Lilly B. admits that this argument was only raised in her brief as a means to reserve the issue on the chance that *Dahle* is overturned by the U.S. Supreme Court. Filing 10 at 29. Given that the Eighth Circuit has interpreted the FVRA to permit Acting Commissioner Berryhill's ratification of ALJ appointments, the ALJ who presided over Lilly B.'s hearing was properly appointed and thus had the authority to issue a determination of her Social Security benefits. *Dahle*, 62 F.4th at 429 (determining that the text and legislative history of the FVRA supports their conclusion).

### III. CONCLUSION

The Court concludes that substantial evidence supports the ALJ's decision that Lilly B. is not disabled. Accordingly,

IT IS ORDERED that

1.      Lilly B.'s Motion for an Order Reversing the Commissioner's Decision, Filing 9, is denied;

2.      Kijakazi's Motion for an Order Affirming the Commissioner's Decision, Filing 13, is granted;

3.      The Commissioner's decision is affirmed;

4.      The Court will enter a separate judgment.

Dated this 8th of December, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge